Good afternoon ladies and gentlemen. And as you can see Judge Gould is joining us by video. Can you hear us Judge Gould? Yes, I can hear you perfectly. And Judge Gould informs me it's a nice day in Seattle as well as a nice day down here too. We will hear argument then in the first case on the oral argument calendar which is United States v. Velazquez. May proceed. Good afternoon Your Honors. Michael Tanaka appearing on behalf of Ms. Velazquez. I'd like to reserve a minute or two for rebuttal if I might. The Court of Stone I do process a fair trial and a fair tribunal where there's a intolerable risk of even the appearance of bias the judgment must be vacated. And that enforces a reacting appearance of fairness by promoting faith and integrity of the justice system. And second and just as important the defendant leaves the courthouse with the feeling of being treated fairly and having the case decided by a neutral and impartial arbiter. Mr. Tanaka I'm having I'm having difficulty hearing you because there's something wrong with your microphone. Maybe you can get the microphone closer to you. There's a little bit of static in the microphone. Is this any better? Well okay try it again. Go ahead. So what happened here was that Judge Wake prejudged this case from the inception. That is from the very first conferences he perceived her as being a troublesome client who was obstructing the course of justice by refusing to plead guilty. That was actually not the case but it colored everything that happened from there on. So in the first conference he had with the lawyer it was initially appointed which was just a couple months after the case was assigned to him. He accused her of being of lying to the lawyer even though it wasn't clear. What was clear was that there was some acrimony between counsel and Ms. Velazquez but it was all precipitated by her desire to be facing substantial prison time one can easily understand her position. And at the time that she met with first counsel Mr. Gonzalez he had not done hardly any work on the case and that was a month into it. But nonetheless Judge Wake perceived her as the problem. Well wait a minute. Mr. Tanaka, Mr. Gonzalez was not her first attorney he was her third attorney. First attorney was Orant and the second attorney was Countryman right? That's right and Judge Wake seemed to hold that against her as well. But if you examine the history. And then Mr. Gonzalez it was the third of six attorneys that she had. Five provided by the court and one provided by her. Well that's true but that generality doesn't exactly portray the picture very clearly. Three of those lawyers were one was appointed and only sensing there was no problem. The second was an appellate lawyer filed an Anders brief and the third was another lawyer appointed by the court. So that's two appellate lawyers and one sentencing lawyer. So that just really leaves Orant and Countryman and we don't really know what happened with Orant but we do know what happened with Countryman because that's in this court's first decision and what we know is that he wasn't prepared to discuss the plea with her, the plea offer with her, that he had missed motion deadlines. So she had legitimate concerns about his representation and I think that's all rather fairly reflected in this court's prior opinion. So you're asking for a remand for resentencing I gather? Primarily your honor but a biased judge is actually a structural error which would implicate the whole judgment. So but she did plead guilty. Are you asking to withdraw that? She did plead. I'm sorry. Are you asking to withdraw that? Yes. So explain to me how would you would you turn to prejudice for a minute because your client was sentenced to a lesser term than the prior judge had imposed. It was a low end of the sentencing guideline and it was less than the government had recommended. So can you connect the dots for me between the alleged... I'm sorry your honor. Go ahead. So that's that's all true but those are all highly inflated numbers in connection with this case. We have a first offender who committed this offense when she was very young and although the court protrator is being heavily involved, it's worth noting that at the time of this heavy involvement she was a full-time student. There's a statement on the dean's list. So she was obviously doing something other than dealing drugs. But aside from that she had a rough upbringing and by every account she had rehabilitated herself and in the words the probation officer was ready to become a productive citizen. And there was a there was just a plethora of mitigation not only at her young age when she committed the offense but her post-offense rehabilitation that was extraordinary and undisputed. Some of the trauma she suffered while she was incarcerated the first time and she had... this case is unique in the sense that she had pre-trial supervision and then she was released after this court reversed. So she was on post-trial supervision and in every instance her behavior was exemplary. She had started a flooring company. She was engaged to be a lawyer. This case cried out for a sentence at the mandatory minimum which made the guideline kind of irrelevant given the facts of this case. I think one could fairly have guessed that that would have been the sentence that there was it was clear that no further prison time was was warranted or necessary and that the court chose to impose you know 50% more than the mandatory minimum suggests that something was happening there other than just a fair dispassionate look at this case. You're down to about two minutes. Do you want to reserve? Yeah. Thank you. We'll hear from the government. Yeah I'm sorry you're muted. I forgot to unmute myself so can you hear me now? Yes we can. Okay. May it please the court my name is Carla Hodes-Delor representing the United States. I'd like to start off first with the question you had just asked regarding prejudice and Mr. Tanaka's claim regarding the guidelines being irrelevant and the mandatory minimum sentence. The guidelines in this case are absolutely relevant and a properly calculated guideline is the correct starting point for any sentencing. Here the mandatory minimum of 60 months only accounted for the drugs and the drug conspiracy. It did not take into account the nine levels of enhancement the defendant properly received. She received plus two for weapons, plus two for money laundering, plus three for her role as a manager or supervisor, and plus two for obstruction of justice. And even though she got a plus two for obstruction of justice, the court still gave her a three level reduction for acceptance of responsibility. The court, even though her defense counsel Mr. Scalepi had missed all of the deadlines relating to sentencing as far as filing the psychologist report, filing objections to the pre-sentence report, giving the list of witnesses and a summary of their testimony of who would be testifying at sentencing. Even though he missed all those deadlines, the court still allowed Mr. Scalepi to present all of this evidence at sentencing. Mr. Scalepi called three witnesses on behalf of defendant, her mom, her sister, and her fiance. He let defendant speak at length. She elocuted for almost an hour. He took into account the pre-sentence report, and he said he gave her the benefit wherever possible. He gave her, quote, as much weight as possible to her recent rehabilitation, as well as the difficulties and trauma she suffered, including in prison. Mr. Lord, may I interrupt you for a second? What do we do with Judge Wake's extra record investigation as to Mr. Scalepi's bar troubles in both states? That is not a problem in this case, Your Honor, when looking at the entire record and deciding whether there was an appearance of bias or actual bias. Why is it not a problem? Do you think that judges should be doing research on the background of attorneys for any reason? Your Honor, Judge Wake, as well as any judge, is entitled to know about the attorneys who are appearing in front of them. Judge Wake did not bring up any of the issues at the bar until Mr. Scalepi had missed all of the sentencing deadlines. Judge Wake was justifiably frustrated with Mr. Scalepi at that point for missing all of those deadlines. It was well into the conversation before Judge Wake mentioned anything regarding Mr. Scalepi's problems and difficulties with the bar, and that was actually directly relevant because he was disciplined for missing court deadlines, which is exactly what was happening in this case. Well, it may be directly relevant, but Mr. Scalepi didn't have any notice that he was going to be researched as to the background by the judge and wasn't ready to provide any counter evidence, was he? Your Honor, Mr. Scalepi probably wasn't aware of that, but the fact is, if Mr. Scalepi had met the court deadlines, he missed numerous deadlines, and had he not missed the deadlines, this topic of conversation might never have occurred. But for the fact that Mr. Scalepi missed deadline after deadline after deadline, and then two days before sentencing filed a motion to continue, and then at filed an 18-page sentencing memorandum, that is what made Judge Wake justifiably frustrated. And it wasn't like Judge Wake started off the hearing bringing up the bar. It was well into their discussion until he brought it up. But he obviously had it in the back of his mind because he'd already done the research. That is correct. He must have had it, but that was because Judge Scalepi had missed those current deadlines. But the fact remains, though, even though the Judge Wake did that, you would have to show, defendant would have to show that Judge Wake displayed a deep-seated favoritism or antagonism that would make fair judgment impossible. And when looking at the record and everything that happened, and how the judge allowed him to proceed with mitigation and present everything, and then gave him a significantly below-guideline sentence, 31 months below the low end of the guidelines, and 31 months below what Judge Teelberg had given, you can't say that there was prejudice such that there was, that her due process rights were violated for a claim of an appearance of bias. Can I interject a question, please? Did the judge make any inquiry about the lawyer with anyone other than with the State Bar Association? The record does not reflect if the judge did that. The record only reflects that he looked up a publicly available report on the State Bar of Arizona and then also one of Florida. But the record doesn't show if there was any other inquiry made. Okay, thank you. And one last question, Mr. Lord. The scope of our review is, pardon me just a minute. I forgot to take the ringer off. Was there an objection, was there a recusal motion made in the trial court? No, Your Honor. How does that affect our scope of review? The scope of review is plain error review. Mr. Scalepi never filed a motion for recusal and never raised this issue. So the issue is reviewed for plain error. And it's the government's contention that no error, let alone plain error, occurred in this case. So on a plain error standard, if I recall this right, the fourth element of that is that the court has discretion to consider whether the fairness, integrity, or reputation of the court would be impaired absent giving relief. And so I guess my question is, would the integrity of the court be impaired in the absence of recusal? No, Your Honor. And the reason is, as I've stated before, first of all, that only came about because the attorney, Mr. Scalepi, missed all the deadlines. But the court did not hold that against him in that he listened to all the mitigation and then he presented and he gave the defendant the benefit of every doubt possible. And then he sentenced the defendant to a significantly below guideline sentence, 25% lower than the low end of the guideline range. So given the entire record and looking at especially what Judge Wake did, he conducted a proper sentence. He evaluated the 3553 factors and he came up with this below guideline sentence. You cannot look at this and find that the usurped by Judge Wake's previous actions with Mr. Scalepi. Okay, thank you. If the court has no further questions, then we would ask you to affirm both the conviction and sentence in this case. Thank you, counsel. Thank you. We will hear rebuttal. Yeah, I'd like to first address Judge Gold's question about the standard and integrity, the third prong of the plein air standard. It's pretty clear though that where there's a biased arbiter or one that at least has the appearance of bias, that meets, that satisfies that third prong. Now, the counsel for the government has argued repeatedly that there was no prejudice because it was below the guideline sentence, notwithstanding the amount of mitigation. And then she also argues there was no prejudice because Judge Wake listened to the sentencing presentation. All that is true, of course, but it doesn't eliminate the residual effect of his outburst with Mr. Scalepi and the ongoing acrimony between Judge Wake and Ms. Velazquez over what he perceived to be her obstinacy. And it is not true that there was no hint of prejudice because the whole dispute between Judge Wake and Mr. Scalepi was over his denial of the continuance, whose purpose was to retain a neuropsychologist who could have provided mitigation, although Judge Wake said he considered everything that a neuropsych could have said. It's hard to conceive of how that could be the case, given that there was no report and that there were many unanswered questions in this case about what was happening between Ms. Velazquez and Mr. Ortiz that caused her to come under his ambit and commit these offenses that I think it's pretty clear that she would not have done otherwise, as the record and subsequent life has made clear. For that reason, we asked the court to vacate the judgment, vacate the sentence, because she suffered from the appearance of bias here that tainted her ability to have a fair hearing. Thank you, counsel. The case just argued be submitted for decision.
judges: THOMAS, GOULD, BEA